# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cr-10056-JES-JEH |
| | ) | |
| THOMAS R. ALT, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Now before the Court is Defendant Thomas R. Alt's Motion (Doc. 37) to Suppress Statements. The United States has filed a Response (Doc. 45). For the reasons set forth below, Defendant's Motion (Doc. 37) is DENIED.

### BACKGROUND

The facts are generally not in dispute. On November 1, 2019, at 9:05 a.m. law enforcement officers arrested Defendant Alt outside of a residential home in Peoria, Illinois. An FBI Special Agent and Illinois State Police Special Agent interviewed Alt that same day. That interview was recorded. At issue in this Opinion is the interpretation and legal effect of the conversation during the interview between Alt and the FBI interviewer. During the interview, the following exchange transpired:[1]

> FBI: All right, so this conversation is going to be recorded and –
> **Alt: Should I have a- a lawyer?**
> **FBI: Uh, well, I'm gonna go through your advice of rights first.**
> **Alt: Ok.**
> **FBI: So, I'm gonna let you know exactly what all of your rights are right now and, uh, then you can make a decision on what you want. All right?**
> Alt: Ok. I- I, just to be clear, um, first off, illegal stuff that I've done right now, um-
> FBI: Yep.

---

[1] This excerpt was stated in the United States' Response to Defendant' Motion and the Court has reviewed the recorded interview, which matches the United States' iteration of the conversation.

Alt: . . . besides carrying weed on me
FBI: We'll get to that but keep your hands back though, too.
Alt: Oh, sorry, sorry. You- you checked me already though, so you're not afraid that I'm gonna . . .
FBI: Yeah, I know, but I don't want you to . . .
Alt: I just want to make sure you're not afraid that I might . . .
FBI: . . . be playing around with anything here.
Alt: Right, yeah, perfect, ok.
**FBI: So, let's just, before we get into anything though, I gotta go through this. This is policy that I gotta read everything to you, so let's go through that first.**
**Alt: Of course.**
FBI: So, this is your, uh . . .
Alt: I like your pen.
FBI: . . . Federal Bureau of Invest- what's that?
Alt: I like your pen by the way.
**FBI: Thank you, uh, this is your Federal Bureau of Investigation advice of rights. All right?**
**Alt: Ok.**
**FBI: So, before we ask you any questions, you must understand your rights.** Oh, and before I get into this, um, what's your highest level of education?
Alt: I am, uh, bachelor's degree in college.
FBI: Ok, and, so, you understand English, you read and write it, just making sure.
Alt: Yes, sir.
**FBI: All right, before we ask you any questions, you must understand your rights, and again, I'm doing what they say, everybody's…**
**Alt: Of course, no, absolutely.**
FBI: I want to make sure you . . .
Alt: No, go ahead, read through it.
FBI: I don't think you're an idiot or anything, I just want to make sure . . .
Alt: You're fine, you're fine.
FBI: . . . we got it correct.
Alt: Go ahead.
**FBI: So, before we ask you any questions, you must understand your rights.** You have the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask questions, uh, you have a right to have a lawyer with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. **If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. So, that last one is the big one.**
**Alt: Yep.**
**FBI: So, no matter what you say, if you decide that you want to have a lawyer, then we stop. So just, any time . . .**
**Alt: And, real quick, on the, uh, appointed lawyer, do you have a lawyer here?**
**FBI: No.**
**Alt: Ok, gotcha, so I would have to schedule something.**
FBI: So, that would be appointed at your initial appearance.

> Alt: Yeah, ok.
> FBI: So, um, then, I got a consent statement here. So, if you could just read that out loud.
> Alt: Ok. Uh, I have read this statement of my rights, and I understand what my rights are. At this time, I am willing to answer, uh, questions without a lawyer.
> FBI: If that is correct, then uh, if you believe that, then go ahead, and sign where it says signed.
> Alt: Allowing that I'm still able to stop when whenever.
> FBI: Whenever you want.
> Alt: Perfect, ok, solid.
>  . . .

## DISCUSSION

The Parties agree there is one issue before the Court: whether Alt invoked his right to counsel? Alt argues all of his statements allegedly made on November 1, 2019 during the recorded interview were involuntary and obtained in violation of his rights secured by the Fifth and Sixth Amendments to the United States Constitution. Doc. 37, at 3. In Response, the United States contends Alt's statements were voluntary and he did not unambiguously and unequivocally request counsel. Doc. 45, at 5. The Parties do not dispute that Alt was in custody during the interview and Alt does not challenge the adequacy of the *Miranda* warnings. Likewise, waiver is not at issue in this Opinion.

If an individual in custody invokes his right to counsel, then the interrogation must cease until counsel is made available to the individual. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966); *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Smith v. Illinois*, 469 U.S. 91, 95 (1984). However, law enforcement is not required to cease questioning immediately if the suspect makes an ambiguous or equivocal reference to counsel that a reasonable officer would have understood to mean the suspect *might* be invoking the right to counsel. *Davis v. United States*, 512 U.S. 452, 459 (1994). "[A] statement either is such an assertion of the right to counsel or it is not." *Id*. (internal quotations marks and citation omitted). The assertion must be clear and unambiguous.

*United States v. Shabaz*, 579 F.3d 815, 818 (7th Cir. 2009). Determining whether a statement is clear and unambiguous is an objective inquiry. *Id.* The Seventh Circuit has found statements that clearly indicate a "present desire" to consult with counsel to be sufficient invocation to the right to counsel. *United States v. Hunter*, 708 F.3d 938, 942 (7th Cir. 2013); *United States v. Hampton*, 885 F.3d 1016, 1020 (7th Cir. 2018). In determining whether Alt clearly invoked his right to counsel, the Court must "consider the circumstances in which the statement was made as well as the words employed." *United States v. Wysinger*, 683 F.3d 784, 793–94 (7th Cir. 2012) (citing *Shabaz*, 579 F.3d at 819; *Hampton*, 675 F.3d at 727). *See e.g.*, *Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir. 1994) (In considering the context of the statement, "I can't afford a lawyer but is there any way I can get one?" lacked the clear present desire to consult with counsel).

Although Alt paraphrases and omits the beginning portion this statement in his argument, Alt submits the following was an unequivocal invocation of his right to counsel: **"And, *real quick*, on the, uh, appointed lawyer, do you have a lawyer here?"** According to Alt, any reasonable officer would have understood this meant he was requesting counsel's presence during the current interrogation. However, the Court must consider the circumstances surrounding the statement, therefore, the Court begins it analysis with the conversation leading up to Alt's alleged request for counsel. *See Hunter*, 708 F.3d at 945 (reiterating it is appropriate to consider prior context to determine whether a defendant invoked his right to counsel).

Alt recognizes merely posing a question to police as to whether the suspect should talk to a lawyer is insufficient to unequivocally invoke one's right to counsel. However, Alt asks the Court to combine his initial question at the beginning of the interview, "Should I have a lawyer?" with a portion of Alt's later question, "[D]o you have a lawyer here?" In doing so, Alt urges the Court to find Alt's second question clarified his first request for counsel and removed all doubt as

4

to its meaning. However, a plain reading of the full statement and review of the recording reveals that Alt's claimed invocation was ambiguous. These two statements were unrelated, and Alt selectively quotes from the second statement. The first question was at the outset before Alt was read his *Miranda* rights and the second statement was asked later after several back and forth exchanges and asked in a different context. After the first statement, the FBI Agent responded to Alt with, "uh, well, I'm gonna go through your advice of rights first," and, "so, I'm gonna let you know exactly what all of your rights are right now and, uh, then you can make a decision on what you want. All right?" Alt responded with "ok" to both statements.

Alt emphasizes the second question of "[D]o you have a lawyer here?" was made *immediately* after Alt was informed of his declaration of rights. However, there was a further exchange, as noted in bold, before Alt's second question which Alt omits.

> FBI: . . . If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. **So, that last one is the big one.**
> **Alt: Yep.**
> **FBI: So, no matter what you say, if you decide that you want to have a lawyer, then we stop. So just, any time. . .**
> Alt: And, *real quick,* on the, uh, appointed lawyer, do you have a lawyer here?
> FBI: No.
> **Alt: Ok, gotcha, so I would have to schedule something.**
> FBI: So, that would be appointed at your initial appearance.[2]
> **Alt: Yeah, ok.**

After being advised of his rights, Alt responded with "yep" then the Agent reminded him that if he decided he wanted to have a lawyer, then the interview would stop. Alt then slightly changed the conversation by interjecting with "*And, real quick*, on the, uh, appointed lawyer, do you have

---

[2] Defendant asserts that the Court should not look beyond the FBI's last statement indicated above. Doc. 37, at 2 n.2. (quoting *Smith v. Illinois*, 469 U.S. 91, 97-98 (1984) ("an accused's post request *responses to further interrogation* may not be used to cast doubt on the clarity of his initial request for counsel.")(emphasis added). *But see United States v. Hunter*, 708 F.3d 938, 953 (7th Cir. 2013) (Tharp, J., dissenting) (disagreeing that *Smith* should be broadly read to mean courts cannot consider "post-request statements that are *not* the product of interrogation"). However, the Court need not look to the subsequent conduct to find that Alt did not clearly invoke his right to counsel.

5

a lawyer here?" In considering the pre-invocation statements and their context, the more natural reading is that Alt was still contemplating invocation but asking a follow-up question about the appointed attorney that the Agent mentioned.

In viewing the context of his statements, Alt appeared to be contemplating whether to ask for counsel or asking about the process if he did request counsel in the future based on his statement "Ok, gotcha, so I would have to schedule something." If counsel was there and it was convenient at the time for Alt, then he considered asking for counsel. But since counsel was not immediately there at the residence where Alt was arrested and Alt was seemingly ready to talk now, he chose to not ask for a lawyer and to speak to the Agents instead. It is not constitutionally required that law enforcement have an appointed lawyer at the station to advise arrestees, or in this case at the residence where they were conducting a sting operation. *See Duckworth v. Eagan*, 492 U.S. 195, 204 (1989). Even if Alt was attempting to invoke his right to counsel, it was not unambiguous and unequivocal. At best, it was ambiguous, and it is well-settled that an officer is not required to cease questioning or probe further into whether an individual is invoking their right to counsel. *Davis*, 512 U.S. at 459. In sum, Alt's argument only begins to hold water if one rearranges the conversation to find Alt said, "Should I have a lawyer?" then immediately stated, "Do you have a lawyer here?" but that's not what happened here.

Although Alt selectively quotes and paraphrases the interview, Alt likens his interview to that of the defendant in *United States v. Wysinger*, 683 F.3d 784 (7th Cir. 2012). Notably, the Seventh Circuit Court of Appeals found the defendant's question—"Do I need a lawyer before we start talking?"—during the opening moments of the interrogation was not an unequivocal request for counsel. Like in *Wysinger*, when courts consider whether individuals follow up on their initial question about obtaining counsel, courts also look to the context of the statements

and the timing. While the court in *Wysinger* noted the defendant's initial inquiry, the court focused on the following second and third statements made nine minutes later:

> Officer: Well, tell us what has been going on. Maybe that's the best way to start.
> **Defendant: I mean, do you think I should have a lawyer? At this point?**
> Officer: That is up to you . . . I read you your rights. If you want an attorney, by all means, get one. Ok?
> **Defendant: I mean, but *can I call one now*? That's what I'm saying.**
> Officer: Who you gonna call? . . . Is he local? . . . What's his name?

*Id.* at 790 (emphasis added). The court found the second time the defendant asked if he should have a lawyer, it was ambiguous but then the defendant's specific response—"I mean, but can I call one *now*? That's what I'm saying"—clarified his ambiguous request based on the context it was made and that it was in response to the officer's statement. At that time, it became clear the defendant presently wanted to speak with an attorney. Context prior to the invocation further supported invocation had occurred as "Agent Rehg had just flipped open his notebook and asked directly (for the first time) for Wysinger to tell the officers 'what has been going on.'" *Id.* at 796.

In *Wysinger*, the United States asserted a strained reading of the questions by arguing they could be read to mean the defendant was asking whether he would still be eligible for cooperation if he called an attorney. *Id*. Here, Alt's interpretation of his question is strained and takes the statement out of context. Alt's statements do not connect like the statements in *Wysinger*. Unlike *Wysinger*, Alt's second question did not immediately precede the first. Like the United States points out, the first question asked advice as to whether he should get an attorney and the second questioned the location of the potential appointed attorney. Further, unlike *Wysinger*, the Agent here did not repeatedly sidestep Alt's question regarding counsel, or aggressively slam the table to startle the defendant and divert from his questions.

Alt also looks to *United States v. Allegra*, 187 F. Supp. 3d 918, 926 (N.D. Ill. 2015) for support to suppress his statements to the FBI. Alt does not explain how his case is similar to

*Allegra* aside from quoting the statement at issue in *Allegra*—"So can you provide me with an attorney?"—however, a simple quote ignores the context of the statement. In *Allegra*, after the agent told the defendant that he would be charged and put in jail pending a bond hearing if he refused to cooperate, the defendant responded by stating "Well, I need to talk to somebody because I don't know what I'm looking at right now. So can you provide me with an attorney?" *Id*. at 921. Based on the Court's above discussion, the context of the defendant's statement in *Allegra* is much different than Alt's and the defendant in *Allegra* clearly asked to be provided an attorney. He was not asking for more detail about the process, he asked "*can* you provide me with an attorney?" Based on the context, it was a present desire to speak with counsel. Unlike *Allegra*, Alt did use a hedging word in the form of "real quick" when he stated: "*And, real quick, on the, uh, appointed lawyer,* do you have a lawyer here?" Based on the context, Alt was still contemplating invoking his right to counsel. The district court in *Allegra* also noted the agents subjectively understood the defendant was invoking counsel when they said, "But you want to speak to an attorney, that's fine. I respect that decision" and "You want to speak to an attorney, go ahead." *Id.* at 924. The responses from the officers interviewing Alt did not give any indication that they subjectively understood Alt was invoking his right to counsel. Although it is not relevant to the invocation inquiry, *Allegra* also involved coercive police tactics after the suspect invoked his right to counsel which were not present here. *See id.* at 926 ("Agent Ostrow told Allegra that he would be charged and 'locked up' if he persisted in his request for counsel."). In sum, the Court disagrees that Alt's case is "strikingly similar" to *Allegra*.

   Additionally, the Court does not find Alt's final argument persuasive—that the Agent used diversion tactics akin to *Wysinger*. Alt does not challenge the sufficiency of the *Miranda* warnings, but asserts that it was conflicting for the Agent to say Alt "had a right to an attorney

8

present during questioning," then telling Alt a "court appointed attorney was not available to him until his initial appearance." This is the dialogue Alt is referring to:

> FBI: . . . If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. *If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.* . . .
> . . .
> FBI: So, that [lawyer] would be appointed at your initial appearance.

The two statements ("[a lawyer] will be appointed for you before any questioning" and "[a lawyer] would be appointed at your initial appearance") on their face may sound conflicting but only if one views the statements in isolation and assumes that questioning must come before the initial appearance. Viewing the statements as a whole, a more reasonable interpretation is that a lawyer can be appointed for you if you request it and cannot afford one. If so, then that lawyer would not be appointed until your initial appearance—meaning no questioning would occur until you have an attorney appointed at your initial appearance. But you can also decide to answer questions now without a lawyer and if you do, you can stop answering at any time. This interaction was vastly different than the diversionary tactics and potentially conflicting information from the interviewer in *Wysinger*.

When looking at the whole picture, and not each remark in isolation, the Court finds Alt did not clearly invoke his right to counsel. Thus, there is no basis to suppress the statements Alt made during the November 1, 2019 interview.

## CONCLUSION

Therefore, Defendant Alt's Motion (Doc. 37) to Suppress Statements is DENIED.

Signed on this 30th day of April, 2021.

                                                                                        s/ James E. Shadid
                                                                                        James E. Shadid
                                                                                        United States District Judge